Joseph R. MINTNER, Jr., Respondent,

v.

Deborah M. MINTNER, Appellant.

WD 79754

Missouri Court of Appeals, Western District.

OPINION FILED: August 15, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied September 5, 2017

Application for Transfer to Supreme Court Denied October 31, 2017

Gary Bradley, Lexington, MO, Counsel for Respondent.

Michael Blanton, Evergreen, CO, Co-Counsel for Respondent.

Douglas Bradley, Kansas City, MO, Co-Counsel for Respondent.

Before Division One: James Edward Welsh, P.J., Lisa White Hardwick, and Gary D. Witt, JJ.

James Edward Welsh, Presiding Judge

Deborah Mintner appeals the circuit court's judgment, following a jury trial, in favor of Joseph Mintner on his claim that Deborah breached her fiduciary duty as the attorney-in-fact under the Durable Power of Attorney of their mother, Eugenia Mintner. We affirm.

## Background

In June 2011, Eugenia[1] executed a Durable Power of Attorney (DPOA) and her Last Will and Testament. The DPOA named Joseph as her attorney-in-fact. A little over a year later, on July 11, 2012, Eugenia amended her DPOA to name Deborah as her attorney-in-fact. The DPOA did not contain a provision allowing the attorney-in-fact to make gifts of the principal's property.

Eugenia died on October 30, 2012. Prior to her death, she had told a friend and neighbor, Nancy Pulliam, that she wanted her house to go to Deborah and her money to go to Joseph when she died. Eugenia's Will provided for her residuary estate to be divided equally between her two children. After Eugenia's death, Joseph went to Platte Valley Bank to check on one of her CDs on which he was the transfer-on-death recipient. The bank informed him that the CD no longer existed and suggested that he "talk to his sister."

Joseph eventually filed a lawsuit against Deborah, claiming that she had breached her fiduciary duties as attorney-in-fact under Missouri's Durable Power of Attorney Act by making a gift to herself of her mother's CDs and bank accounts.[2] He alleged that Deborah had gifted over $80,000 to herself. The breach of fiduciary duty claim was tried to a jury in December 2015.

The evidence at trial showed that, in July 2012, Deborah presented Eugenia's DPOA to the Platte Valley Bank seeking access to Eugenia's $65,800 CD (which named Joseph as the transfer-on-death re-

---

1. We refer to the parties and their mother by their first names in this opinion for the sake of clarity and brevity. No disrespect is intended.

2. Joseph also raised equitable claims of unjust enrichment and constructive trust against Deborah and her husband, Stanley Kaminski, related to Eugenia's home, which went to Deborah upon Eugenia's death. Those claims were left to be decided by the trial judge after the jury trial.

cipient). When the bank eventually permitted Deborah access to the CD, Deborah closed the account, transferred the funds into another account in her mother's name and then wrote a check out of that account and deposited it into her own bank account. Deborah used her position as her mother's attorney-in-fact to do the same thing with another of her mother's CDs (valued at over $7,000). Deborah also used her position as attorney-in-fact to add herself as the payable on death recipient of the funds in Eugenia's account at US Bank.

Deborah admitted that she used the DPOA to withdraw $72,148 from her mother's bank accounts and placed the money into accounts in her own name, purportedly so that she could pay Eugenia's bills. Deborah claimed that she was following her mother's explicit oral instructions to make those transactions and argued that she was required by Missouri's DPOA statutes to follow those oral instructions. Deborah presented the testimony of Eugenia's niece and Eugenia's sister-in-law, both of whom testified that they heard Eugenia tell Deborah to cash in the CDs and put them in an account with her name on it so that she would have access to the funds.

The jury found in favor of Joseph on his breach of fiduciary duty claim and assessed damages at $65,815, plus interest. The jury also found that Deborah was liable for Joseph's attorneys' fees. On December 11, 2015, the circuit court entered its judgment as to those claims. The

amount of attorney fees and Joseph's two equitable claims against Deborah and her husband, Stanley Kaminski, (*i.e.*, claims of unjust enrichment and for a constructive trust) were left to be decided by the trial judge. Following a hearing on March 16, 2016, the trial court issued its final judgment on May 26, 2016, confirming its rulings in the prior judgment, granting Joseph $63,745.11 in attorneys' fees, and denying relief on Joseph's two equitable claims.

## Point IV: Authority to Consider this Appeal

We first consider Deborah's *Point IV*, in which she addresses the authority of this Court to consider this appeal. An appellate court has a duty, *sua sponte*, to examine its authority to address the merits of an appeal. *Title Partners Agency, LLC v. Dorsey*, 308 S.W.3d 308, 310 (Mo. App. 2010). In order to have such authority, the judgment that is being appealed must be a final judgment; if it is not, then we lack authority and must dismiss the appeal. *Id.*; § 512.020.[3]

In Point IV, Deborah argues that this Court has the authority to consider her appeal of the May 26, 2016, final judgment because the trial court continued to have jurisdiction over the case until it ruled on Joseph's Counts IV and V for equitable relief against Deborah and Stanley, which it did not do until May 26, 2016. She therefore contends that her notice of appeal, which she filed on June 2, 2016, was timely filed.[4]

---

3. Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2013 Cumulative Supplement and the 2014 and 2015 Non-Cumulative Supplements.

4. Joseph argues that, under Rule 81.05, the parties' post-trial motions were deemed denied ninety days after they were filed, and such motions had to be filed within thirty

days of December 11, 2015. He claims, therefore, that all such post-trial motions were deemed denied by April 9, 2016, at the latest. Accordingly, the June 2, 2016, notice of appeal was not filed within ten days after the judgment became final and was not timely. As explained *infra*, however, the December 11, 2015, judgment was not a final, appealable judgment.

As a general rule, this Court has the authority to consider only a final judgment. *City of Kansas City v. Woodson*, 130 S.W.3d 7, 10 (Mo. App. 2004). For a judgment to be final and appealable, it must dispose of all issues and all parties in the litigation and leave nothing for future determination. *Title Partners*, 308 S.W.3d at 310; Rule 74.01(b). Any judgment as to fewer than all parties or all claims is merely an "interlocutory judgment" that "reserves and leaves some further question or direction for future determination and is thus not final for purposes of appeal." *Joy v. Safeway Stores, Inc.*, 755 S.W.2d 13, 14 (Mo. App. 1988).[5]

In his Second Amended Petition for Damages, Joseph sued both Deborah Mintner and Stanley Kaminski. As the trial court stated in its December 11, 2015, judgment, "no claim involving Stanley Kaminski [was] presented to the jury." The only claim submitted to the jury was Joseph's claim against Deborah for breach of fiduciary duty, on which the jury found in favor of Joseph, assessed damages, and found Deborah liable for Joseph's attorneys' fees.

In its December 11, 2015, judgment, the court addressed only the claims decided by the jury. It set a hearing for March 16, 2016, and declared that "the Court will then pronounce final judgment." Two issues remained for the trial judge: (1) the amount of attorneys' fees, and (2) whether Joseph was entitled to an equity judgment against Deborah and Stanley pursuant to Counts IV and V of his Second Amended Petition. Following the March 16th hearing, the trial court entered its May 26, 2016, judgment, ruling that, "[w]ith respect

to Counts IV and V of Plaintiff's Second Amended Petition, Judgment is hereby entered in favor of Defendants Deborah Mintner and Stanley Kaminski." The court awarded Joseph $63,745 in attorneys' fees.

The law is clear that, until the trial court enters a judgment disposing of all issues and all parties, any appeal is premature. Here, the December 11, 2015, judgment did not dispose of all issues and all parties. Although the trial court heard evidence pertaining to Joseph's equitable claims against Deborah and Stanley at the same time that the jury heard evidence about Joseph's legal claims against Deborah, until the court issued its final judgment on May 26, 2016, Joseph's equitable claims against Stanley and Deborah remained pending. Thus, it would have been premature to file a notice of appeal before that final May 26, 2016, judgment.

As the trial court had not disposed of all claims and all parties until May 26, 2016, the June 2, 2016, notice of appeal was timely, and this Court is authorized to consider this appeal.

### Points I-III: Claims of Instructional Error

Deborah's first three points raise claims of instructional error. Points I and III concern the giving of Instruction No. 7, which instructed the jury on the definition of "fiduciary duty." Point II asserts error in the giving of Instruction No. 6, which informed the jury that the trial court had ruled, as a matter of law, that Eugenia's DPOA did not permit Deborah to make gifts to herself.

---

**5.** Pursuant to Rule 74.01(b), a trial court may certify for appeal a judgment that addresses fewer than all claims or all parties, but it must expressly declare that "there is no just reason for delay." *See Title Partners*, 308

S.W.3d at 310. Here, the trial court did not attempt to certify its December 11, 2015, interlocutory judgment for appeal using this method.

Whether a jury was properly instructed is a question of law that we review *de novo*. *Bach v. Winfield-Foley Fire Protection Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008). "Review is conducted in the light most favorable to the submission of the instruction, and if the instruction is supportable by any theory, then its submission is proper." *Id.* "Instructional errors are reversed only if the error resulted in prejudice that materially affects the merits of the action." *Id.*

*In Point I,* Deborah contends that the trial court erred in giving Instruction No. 7 because it recited only that portion of section 404.714 that was favorable to Joseph and omitted that portion that was favorable to her, thereby violating Rule 70.02(b)'s requirement that a jury instruction be "impartial." Deborah claims that the instruction compelled the jury to find against her and also negated her defense to the claim for attorneys' fees. *Point III* is essentially a reiteration of Point I in reverse, in that it asserts that the trial court erred in refusing to give Deborah's proffered Instruction No. B, instead of Instruction No. 7.

"The decision to submit a definitional instruction is in the sound discretion of the trial court." *In re Van Orden*, 271 S.W.3d 579, 586 (Mo. banc 2008), *abrogated on other grounds by Matter of Care & Treatment of Kirk v. State*, 520 S.W.3d 443, 452 (Mo. 2017). "Even if not mandated by MAI, a trial court must define for the jury legal or technical terms occurring in the instructions because their meaning is not within the ken of the ordinary juror[.]" *Cmty. Bank of Raymore v. Patterson Oil Co.*, 463 S.W.3d 381, 390 (Mo. App. 2015).

Here, Instruction No. 7 was derived from subsection .1 of section 404.714. Section 404.714 consists of ten subsections. A general statement of an attorney-in-fact's fiduciary obligations is stated in subsection .1. The remaining subsections address the various aspects of an attorney-in-fact's duties in greater detail. *See* § 404.714.2-.10. Instruction No. 7 defined "fiduciary duty" as follows:

> The term "fiduciary duty," as used in these instructions, means the obligation to exercise the powers conferred in the best interests of the principal, to avoid self-dealing and conflicts of interest, and in the absence of explicit authorization, to exercise a high degree of care in maintaining, without modification, any estate plan which the principal may have in place, including, but not limited to, arrangements made by the principal for disposition of assets at death through beneficiary designations, ownership by joint tenancy or tenancy by the entirety, trust arrangements or by will or codicil.

Deborah contends that the instruction also should have included the following paragraph (taken from subsection .2 of § 404.714), which she included in her proposed Instruction No. B:

> On matters undertaken or to be undertaken in the principal's behalf and to the extent reasonably possible under the circumstances, an attorney in fact has a duty to keep in regular contact with the principal, to communicate with the principal and to obtain and follow the instructions of the principal.

While Deborah complains that the instruction, as given, violated Rule 70.02(b)'s requirement that instructions be "impartial," that Rule also requires instructions to be "brief" and "simple." The instruction that Deborah proposed was neither. In short, the instruction's definition of "fiduciary duty" was properly derived from the statute and complied with Rule 70.02.

In this case, the propriety of the language used in Instruction No. 7 is irrelevant, because the question of whether

Deborah breached her fiduciary duty under the DPOA was a question of law that should not have been submitted to the jury in the first place. *See Randall v. Randall*, 497 S.W.3d 850, 854 (Mo. App. 2016) (the construction and application of the DPOA statutes and the interpretation of a written power of attorney are questions of law).

■■■■■■ The duties of an attorney-in-fact under a DPOA are governed by the Durable Power of Attorney Act, §§ 404.700–.735, RSMo. Section 404.714.1 of that Act provides, *inter alia*:

> An attorney in fact who elects to act under a power of attorney is under a duty to act in the interest of the principal and to avoid conflicts of interest.... A person who is appointed an attorney in fact ... has a fiduciary obligation ... to avoid self dealing and conflicts of interest.

This statute codifies the concept that "[t]he relationship of principal and agent created by a power of attorney is by its nature one of trust and confidence, creating a fiduciary relationship and an obligation on behalf of the agent to act in the sole interest and for the sole benefit of the principal." *Randall*, 497 S.W.3d at 855. As with all DPOA's in Missouri, Eugenia's DPOA created in Deborah a "fiduciary duty" and an obligation to act solely for Eugenia's benefit.

Deborah's entire argument regarding Instruction No. 7 is based upon the premise that her reliance on Eugenia's oral instructions was a valid defense to an action for breach of fiduciary duty by an attorney-in-fact. That is not a valid premise. Our courts consistently hold that an attorney-in-fact may make gifts to herself *only* if such gifts are expressly allowed in the DPOA.

Section 404.710.6 provides that certain powers of the attorney-in-fact must be "expressly enumerated and authorized in the power of attorney." That statute provides, in pertinent part:

> Any power of attorney ... shall be construed to grant power or authority to an attorney in fact to carry out any of the actions described in this subsection if the actions are expressly enumerated and authorized in the power of attorney. Any power of attorney may grant power [or] authority to an attorney in fact to carry out any of the following actions if the actions are expressly authorized in the power of attorney:
>
> . . . .
>
> (3) To make or revoke a gift of the principal's property in trust or otherwise[.]

§ 404.710.6. Pursuant to this provision, our courts have consistently held that an attorney-in-fact is prohibited from making a gift of the principal's property to himself, *unless* the DPOA contains *express written authorization* allowing him to do so. *See Randall*, 497 S.W.3d at 854-55; *In re Estate of Lambur*, 397 S.W.3d 54, 64 (Mo. App. 2013); *Herbert v. Herbert*, 152 S.W.3d 340, 353 (Mo. App. 2004). "Whether the attorney-in-fact has *oral authorization* from a principal to make a gift to himself ... is irrelevant." *Lambur*, 397 S.W.3d at 64; *Herbert*, 152 S.W.3d at 353 (held that § 404.710.6 overruled prior opinions holding that a principal's oral authorization is sufficient for the attorney-in-fact to make gifts to himself).

■■■■■ This prohibition encompasses more than "gifts" in the traditional sense. An attorney-in-fact cannot take any action that would result in assets eventually going to the attorney-in-fact unless the language of the DPOA expressly allows it. *See Herbert*, 152 S.W.3d at 353-54 (adopting a black letter rule that an attorney-in-fact may not transfer the principal's assets to a joint account which will become the sole

property of the attorney-in-fact unless there is written authorization in the DPOA for the attorney-in-fact to make gifts to himself); *see also Lambur*, 397 S.W.3d at 64-65 (held that a fiduciary under a DPOA may not create a "gift" to himself by depositing the principal's money into a bank account that is jointly owned with the attorney-in-fact, who has a right of survivorship).

Strong public policy supports these prohibitions. *See, e.g., Lambur*, 397 S.W.3d at 64; *Herbert*, 152 S.W.3d at 353. As explained in *Lambur*, section 404.710.6 is meant "to protect a class of people, the principals, who by the very circumstances that spawned the granting of the POAs, are least likely to be able to protect themselves from self dealing by unscrupulous fiduciaries." 397 S.W.3d at 64. "Without the limitation of § 404.710.6(3), an attorney in fact, if so inclined, would be allowed to make an unauthorized gift, based upon the claimed oral authorization of the principal, and the only person who could refute the claim would be dead[.]" *Id.* (quoting *Herbert*, 152 S.W.3d at 353).[6]

 In light of the foregoing authorities, it is clear that Deborah should never have been allowed to argue to the jury that her conduct in making gifts to herself could be excused because she was acting on oral instructions. As noted, the construction and application of the DPOA statutes and the interpretation of a written DPOA are questions of law. *Randall*, 497 S.W.3d at 854. As a matter of law, an attorney-in-fact may only make gifts to herself if such gifts are expressly allowed in writing in the DPOA; oral instructions

are never sufficient. *See id.* at 855-56. As noted, Deborah's entire argument regarding Instruction No. 7 is based upon the erroneous premise that her reliance on Eugenia's oral instructions was a valid defense. The circuit court ruled, as a matter of law, that the DPOA did not allow the attorney-in-fact to make gifts to herself. Whether Deborah violated her fiduciary duties in doing so also is question of law. The trial court could and should have ruled, as a matter of law, that Deborah's transfer of Eugenia's funds into accounts in her own name was a gift to herself, and, therefore, violated her fiduciary duties. No matter, the jury reached the correct conclusion regarding Deborah's conduct.

Deborah cannot now be heard to argue on appeal that Instruction No. 7 was erroneous because it somehow limited her ability to raise a defense that she should not have been allowed to raise in the first place. Points I and III are denied.

 In *Point II*, Deborah asserts that the trial court erred in giving Instruction No. 6 to the jury. Instruction No. 6 states:

This Court has ruled as a matter of law that the General Durable Power of Attorney at issue in this case did not authorize Deborah Mintner to make gifts to herself of Eugenia Mintner's property.

Deborah claims, *inter alia*, that the instruction violated Rule 70.02's requirement of impartiality and was "nothing more than an abstract statement of the law."

We disagree. Instruction No. 6 simply advised the jury of the Court's prior ruling regarding its construction of the DPOA, which, as noted, is a question of law. As we

---

**6.** Deborah focuses her argument on *Randall*, 497 S.W.3d 850, which she attempts to distinguish. *Randall* does not assist her; it merely reaffirmed the rules set forth in earlier cases such as *Herbert* and *Lambur* which hold that an attorney-in-fact may make transfers of property to himself from the principal's property *only* if the DPOA contains express written authorization for such transfers, and oral authorization is never sufficient. *See id.* at 855-56.

explained, *supra*, the trial court should not have submitted to the jury the legal question of whether Deborah breached her fiduciary duties. The trial court could and should have determined, not just that the DPOA at issue in this case "did not authorize [Deborah] to make gifts to herself of [Eugenia]'s property," but also that Deborah's transfer of Eugenia's funds into accounts in her name was, as a matter of law, a gift to herself, and was, therefore, a violation of her fiduciary duties. The court should have limited the jury to deciding the amount of damages and whether Deborah was liable for Joseph's attorneys' fees. Point denied.

## Conclusion

Based on the foregoing, we affirm the circuit court's judgment.

All concur.