

# Missouri Court of Appeals

## Southern District

In Division

ESTATE OF NANCY MCKEAN, DECEASED )
BY AND THROUGH PERSONAL )
REPRESENTATIVE CHRISTI EGLOFF, )
                                   )
        Appellant, )     Nos. SD37650 & SD37651
                                    )        CONSOLIDATED
v. )
                                      )     **Filed:  September 27, 2023**
GLORIA D. BAKER, KENNETH BAKER, )
and JUSTIN BLAKE, )
                                      )
        Respondents. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown, Judge

## VACATED IN PART AND REMANDED WITH INSTRUCTIONS

In 2016, Nancy McKean ("Mother") sued her children Gloria Baker ("Daughter") and Justin Blake ("Son"), alleging they stole her money and property by making unauthorized transfers under a durable power of attorney ("DPOA").[1]  Mother died before trial, and was unable to testify.  Mother's niece, Christi Egloff ("Niece"), was appointed personal representative of Mother's estate ("the Estate").[2]  At trial, Daughter testified that Mother orally instructed her to

---

[1] Mother also sued her son-in-law, Kenneth Baker, but the allegations against him are not relevant to the issues raised in this appeal.  Daughter also filed a separate action, which was consolidated into the current case.

[2] When describing actions taken on behalf of Mother's estate, such as making arguments in this appeal, we refer to Egloff as "the Estate[.]"  When describing actions taken by Egloff personally, we use the term "Niece[.]"

make certain transfers of Mother's assets or property to Daughter and Son. Daughter admitted she didn't strictly follow the terms of the DPOA but claimed she was following her Mother's oral directives and acting in her Mother's best interest. The trial court entered judgment finding in favor of Daughter and Son on the Estate's claims related to the alleged unauthorized transactions, finding "any claimed loss by [the Estate] as a result [of Daughter and Son's uses of the DPOA] were the product of and substantially entailed a good faith judgment determination on the part of [Daughter] and/or [Son]." Additionally, the trial court reformed a warranty deed to certain real property (the "Lilac Lane Property") in favor of Daughter.

The Estate challenges that judgment in eight points. Because the DPOA did not expressly authorize Daughter and Son to transfer Mother's assets to themselves, we vacate the trial court's denial of the Estate's claims arising out of Daughter and Son's unauthorized use of the DPOA. We also vacate the portion of its judgment reforming the warranty deed.

**Background**

In November 2013, Mother, who was legally blind, signed a DPOA naming Daughter and Son as her agents.[3] Because Mother could not see what was written on the DPOA, she relied on Daughter to read it to her. Daughter read the DPOA to Mother, including Section 11, which expressly authorized the agents to make gifts from the principal's assets to members of the principal's family but expressly prohibited the agents from making gifts to themselves. This provision stated the agents may:

> 11. Make gifts from my assets to members of my family and to such other persons or charitable organizations with whom I have an established pattern of giving (or if it is appropriate to make such gifts for estate planning and/or tax purposes), to file state and federal gift tax returns, and to file a tax election to split gifts with my spouse, if any. No agent acting under this instrument, except as specifically authorized in this instrument, shall have the power or authority to (a) gift, appoint, assign or designate any of my assets, interests or rights, directly or indirectly, to such Agent, such Agent's estate, such Agent's creditors, or the creditors of such Agent's estate, (b) exercise any powers of appointment I may hold in favor of such Agent, such Agent's estate, such Agent's creditors, or the

---

[3] Daughter prepared the DPOA using LegalZoom.com. Daughter also prepared a healthcare power of attorney, which is not relevant to the issues in this appeal.

creditors of such Agent's estate, or (c) use any of my assets to discharge any of such Agent's legal obligations, including any obligations of support which such Agent may owe to others, *excluding* those whom I am legally obligated to support.

The DPOA further provided that: "My Agent shall not be liable for any loss that results from a judgment error that was made in good faith. However, my Agent shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Power of Attorney."

From January 2014 to September 2015, Daughter, using the DPOA, transferred certain assets belonging to Mother to Daughter and Son. These transfers included: (1) gifts in the amount of $13,000 each to Daughter and Son; (2) reimbursement to Son for repairs on real property later deeded to him; and (3) the Lilac Lane Property deeded to Daughter.[4] Daughter testified that each transfer was made based on her Mother's oral instructions and she was always acting in her Mother's best interest.

According to Daughter, Mother *orally* instructed Daughter to give Daughter and Son $13,000 each in order to spend down Mother's assets so that Mother would be eligible for government aid. Daughter explained that, while the $13,000 was in an account in Daughter's name only, she considered it Mother's money—not a "gift." Daughter explained it was the same with Son's $13,000—"We did not consider it a gift until [Mother's] death."

Daughter testified Mother also *orally* instructed Daughter to write a check to Son in the amount of $14,906.27 in order to reimburse him for repairs on a house that Mother owned in California, which was eventually deeded to Son. The repairs happened before Mother deeded the property to Son. Daughter wrote a check to Son in the amount of the repairs as *orally* instructed by Mother.

According to Daughter, Mother wanted both children to receive her real property after she died. To achieve this end, in February 2014, Daughter attempted to draft and prepare a

---

[4] There were other disputed transactions but the Estate's appeal focuses on these transactions.

3

warranty deed for the Lilac Lane Property, which was Mother's home until September 2015. The warranty deed was signed by Mother and recorded in the county recorder of deeds. However, it referenced an incorrect lot number and contained grant language referring to joint tenants but conveying title to only Daughter. After realizing the warranty deed signed by Mother was invalid, Daughter spoke with representatives of a title company, who instructed her to prepare a new special warranty deed. The special warranty deed contained a misspelling in the legal description, but otherwise referred to the correct parcel and had grant language creating a joint tenancy between Mother and Daughter. Daughter signed the special warranty deed using the DPOA.

Eventually, Mother became angry with Daughter about an assisted-living arrangement in Missouri, and told Daughter she would revoke the DPOA. In September 2015, Mother travelled to Washington to visit Niece and Niece's boyfriend. While there, Mother met with an attorney in Seattle, who drafted and notarized a revocation of the DPOA. Mother told the attorney she was concerned Daughter had abused her authority under the DPOA and had made *inter vivos* gifts and had transferred Mother's home to Daughter. The attorney met with Mother alone and did not believe Mother was being unduly influenced. Mother's attorney drafted a letter to Daughter and Son informing them Mother was moving to Washington and demanded an accounting of all actions taken by Daughter and Son under the DPOA. The letter further demanded that Daughter return all assets being held in Daughter's possession, including a key to the Lilac Lane Property. Daughter agreed to return Mother's money and give her a key to the house, but only if she returned to Missouri. Mother never returned to Missouri, and Daughter never returned the property.[5]

---

[5] Mother revised her estate plan while in Washington in 2016 with the assistance of a new attorney, with Mother signing new documents in January 2017. Mother's estate planning attorney believed Mother was of sound mind. Mother executed a new power of attorney, health care directive, last will, and disposition of remains.

After Mother revoked the DPOA, Daughter created and signed a quitclaim deed, purporting to transfer the remainder of Mother's interest in the Lilac Lane Property to Daughter. Daughter explained she attempted to quitclaim the property to herself because she was afraid Mother was being unduly influenced by Niece and she wanted to protect the property.

Mother sued Daughter and Son for: Count 1: Statutory Accounting; Count 2: Equitable Accounting; Count 3: Cancellation of Deeds and Ejectment; Count 4: Constructive Trust; Count 5: Resulting Trust; Count 6: Fraud; Count 7: Conversion; and Count 8: Unjust Enrichment. The matter was tried by the court. The trial court found, among other things, that Daughter and Son's use of the DPOA was the "product of and substantially entailed a good faith judgment" and denied the Estate's claims related to the unauthorized transfers. The Judgment stated:

> [Daughter] testified that she realize[d] now that she did not strictly follow all of the provisions of the DPOA, but that she tried her best and always tried to follow [Mother's] directives and to otherwise do what was in her [M]other's best interests. The [trial court] is so persuaded and agrees.

Additionally, the trial court ordered the Lilac Lane Property deed be reformed "to be solely owned by [Daughter], free of any interest of [Mother's] estate" even though "[Daughter] has not specifically asserted a claim seeking reformation of the [Lilac Lane Property] deed[.]"

**Discussion**

Points 1 and 2 challenge the trial court's reformation of the warranty deed to the Lilac Lane Property because no party pleaded reformation and the matter was not tried by consent. Points 3 through 8 challenge the trial court's findings and conclusions pertaining to Daughter and Son's transfers of Mother's assets and property to themselves. Points 3 and 4 argue the trial court erred in concluding that Daughter and Son acted in "good faith" because a fiduciary who acts with a conflict in interest, by transferring to themselves assets of the principal in violation of the DPOA, cannot have acted in good faith. Points 5 and 6 argue the trial court erred in concluding that Daughter and Son "substantially complied" with their fiduciary duties in transferring Mother's assets and property to themselves because they did not have written

5

authorization to make the transfers. Finally, points 7 and 8 argue the trial court erred in failing to award the Estate the $13,000 each that Daughter and Son gifted themselves. Because our resolution of points 3 and 5 are dispositive of points 4, 6, 7 and 8, we do not address those points. For ease of analysis, we address the points out of order.

**Standard of Review**

The judgment in a court-tried civil case will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976). "In reviewing a court-tried case, we review the evidence in a manner favorable to the judgment, disregarding contradictory evidence, and we defer to the trial court's credibility determinations." ***Dash v. Taylor***, 668 S.W.3d 580, 584 (Mo. App. E.D. 2023). However, we review questions of law *de novo*. ***In re Estate of Collins***, 405 S.W.3d 602, 605 (Mo. App. W.D. 2013) (quoting ***Elam v. Dawson***, 216 S.W.3d 251, 253 (Mo. App. W.D. 2007)). "[T]he interpretation of a written power of attorney is a question of law." ***In re Estate of Lambur***, 397 S.W.3d 54, 63 (Mo. App. S.D. 2013).

***Points 3 and 5: Transfers to Daughter and Son Were Not Expressly Authorized by the DPOA—No "Good Faith" or "Substantial Compliance" Exception***

The Estate argues Daughter and Son could not have been found to have acted in "good faith" under the DPOA (point 3) or "substantially complied" with their fiduciary duties (point 5) by transferring Mother's assets to themselves. We agree that Daughter and Son's self-dealings were unauthorized under the DPOA and that, under Missouri law, as discussed below, there is no "good faith" or "substantial compliance" exception to the prohibition against self-dealing without written authorization.

A DPOA creates a principal-agent relationship and "is by its nature one of trust and confidence, creating a fiduciary relationship and an obligation on behalf of the agent to act in the

6

sole interest and for the sole benefit of the principal."[6] ***Mintner v. Mintner***, 530 S.W.3d 534, 541 (Mo. App. W.D. 2017) (quoting ***Randall v. Randall***, 497 S.W.3d 850, 855 (Mo. App. W.D. 2016)). The duties of an attorney in fact under a DPOA are governed by the Durable Power of Attorney Act ("the Act"), §§ 404.700-.735.[7] Section 404.714.1 of the Act provides, among other things:

> An attorney in fact who elects to act under a power of attorney is under a duty to act in the interest of the principal and to avoid conflicts of interest. . . . A person who is appointed an attorney in fact . . . has a fiduciary obligation . . . to avoid self dealing and conflicts of interest[.]

Under a DPOA, "[a]n attorney in fact *shall* exercise authority granted by the principal in accordance with the instrument setting forth the power of attorney[.]" ***Ingram v. Brook Chateau***, 586 S.W.3d 772, 775 (Mo. banc 2019) (citing § 404.714.7) (emphasis added). An attorney in fact may "make . . . a gift of the principal's property in trust or otherwise" *if* the actions "are expressly authorized in the power of attorney[.]" § 404.710.6(3). "This provision has been interpreted by our courts to mean that an attorney in fact is prohibited from making a gift of the principal's property to himself or anyone else, ***unless*** the DPOA contains ***express written authorization*** allowing him to do so." ***Randall***, 497 S.W.3d at 855. "This prohibition encompasses more than 'gifts' in the traditional sense. An attorney-in-fact cannot take *any* action that would result in assets eventually going to the attorney-in-fact unless the language of the DPOA expressly allows it." ***Mintner***, 530 S.W.3d at 541 (emphasis added).

Furthermore, it is irrelevant that the attorney in fact has oral authorization from the principal to make the transaction. ***Lambur***, 397 S.W.3d at 64. This is because our General Assembly, "in its wisdom has seen fit to include the requirement of § 404.710.6 to protect a class

---

[6] Under a DPOA, one person, the principal, delegates authority over his or her assets to another person, called an agent or an attorney in fact. "The durable power of attorney, which was intended as an inexpensive, flexible, and private alternative to guardianship, has become a vehicle for fleecing the estates of confused, sick, or forgetful elderly people." Lawrence A. Frolik, *Keep Powers of Attorney in Check* 45-APR Trial 42-43 (2009).

[7] All statutory citations are to RSMo (2016).

of people, the principals, who by the very circumstances that spawned the granting of the POAs, are least likely to be able to protect themselves from self dealing by unscrupulous fiduciaries." *Estate of Herbert v. Herbert*, 152 S.W.3d 340, 353 (Mo. App. W.D. 2004). Without such a limitation, an attorney in fact would be allowed to make an unauthorized gift, based upon claimed oral authorization of the principal, and the only person who could refute the claim would be dead. *Lambur*, 397 S.W.3d at 64. We therefore start by looking to see if the DPOA expressly authorized Daughter and Son to transfer Mother's assets to themselves.

## Does the Language of the DPOA Authorize Daughter and Son's Transactions to Themselves?

We strictly construe powers of attorney. *Randall*, 497 S.W.3d at 856. The rule of strict construction means we cannot give a DPOA a broader application than is warranted by its plain and unambiguous terms, and we cannot presume anything that is not expressed by the DPOA. *See Haines v. Branson Cabin Rentals, LLC*, 635 S.W.3d 172, 174 (Mo. App. S.D. 2021) (discussing strict construction of condominium declarations).

Section 11 of the DPOA expressly authorizes the attorney in fact to make gifts to members of Mother's family, a category to which both Daughter and Son belong. However, the sentence granting the attorney in fact the general authority to make gifts to Mother's family is followed by a specific prohibition against self-dealing:

> No agent acting under this instrument, except as specifically authorized in this instrument, shall have the power or authority to (a) gift, appoint, assign or designate any of my assets, interests or rights, directly or indirectly, to such Agent, such Agent's estate, such Agent's creditors, or the creditors of such Agent's estate[.]

"When a provision of a contract deals with a specific situation, it will prevail over a more general provision if there is ambiguity or inconsistency between them." *Lehman v. Automotive Invs., LLC*, 608 S.W.3d 733, 740 (Mo. App. E.D. 2020) (quoting *Fairmont/Monticello, LLC v. LXS Invs., Inc.*, 554 S.W.3d 478, 482 (Mo. App. E.D. 2018)).

8

Because we must strictly construe the DPOA and because provisions that deal with a specific situation prevail over more general provisions, we hold that the DPOA contained no express authorization for Daughter and Son to transfer Mother's property or assets to themselves.[8] Those transactions are, therefore, void. *See **Herbert***, 152 S.W.3d at 354 (holding respondent's deposit of sale proceeds from principal's property into the joint account was ineffective, as a matter of law, and the title of the sale proceeds never passed to the joint account, where the principal orally instructed agent to make such deposits and the DPOA contained no provision expressly authorizing the transaction); ***Randall***, 497 S.W.3d at 857 (holding that the deed son executed, having no authority to do so under the DPOA, was void and a nullity).

**There is No "Good Faith" or "Substantial Compliance" Exception for Unauthorized Self-dealing under DPOAs**

Next, we address whether an agent who engages in self-dealing in the absence of express authorization violates their fiduciary duties. The trial court found Daughter and Son acted in "good faith" in making the transactions under the DPOA and "substantially complied" with their fiduciary duties.

We are aware of no Missouri case law that permits an attorney in fact to engage in self-dealing without written authorization based on a claim that the agent did so in "good faith" or in "substantial compliance" with their fiduciary duties. In fact, Missouri case law makes clear that an attorney in fact violates his or her fiduciary duties by engaging in self-dealing *even if* the principal orally authorized the attorney in fact to make the transaction, and *even if* the assets were purportedly used to benefit the principal, *unless* the DPOA contains written authorization for the transaction. Such was the lesson in ***Mintner***. There, a mother executed an amended

---

[8] While we are aware of no Missouri case law that has interpreted the same language of section 11 of the DPOA, at least one other jurisdiction has held that identical language does not give the agent the power to gift the principal's property to herself. *See **Matter of Succession of Frazier***, 349 So.3d 634, 637 (La.App. 2 Cir. 9/21/22).

9

DPOA naming her daughter as her attorney in fact. *Mintner*, 530 S.W.3d at 537. The DPOA did not contain a provision allowing the attorney in fact to make gifts of the principal's property. *Id.* at 542. The daughter admitted she used the DPOA to withdraw funds from her mother's bank accounts and placed the funds into accounts in her own name, purportedly so that she could pay her mother's bills. *Id.* at 538. The daughter claimed she was following her mother's explicit oral instructions to make those transactions and presented testimony of her mother's niece and sister-in-law, both of whom testified they heard mother tell daughter to cash in the certificates of deposit and put them in an account with daughter's name on it so she could have access to the funds. *Id.* None of this excused the violations of the DPOA. The Western District of our Court held that "[daughter] should never have been allowed to argue to the jury that her conduct in making gifts to herself could be excused because she was acting on oral instructions." *Id.* at 542. "The trial court could and should have ruled, as a matter of law, that [daughter's] transfer of [mother's] funds into accounts in her own name was a gift to herself, and, therefore, violated her fiduciary duties." *Id.*

Like in *Mintner*, Daughter and Son transferred assets and property belonging to the principal to themselves based on an oral instruction to do so rather than written authorization as required by the Act. By doing so, Daughter and Son violated their fiduciary duties and there is no "good faith" or "substantial compliance" exception to the requirement that an attorney in fact must have written authorization to transfer the principal's property to herself or himself. While Daughter and Son may not have acted in bad faith, there is no "good faith" or "substantial compliance" exception that makes Daughter and Son's transfers of Mother's assets and property to themselves any less void.[9]

---

[9] Nor does the provision in the DPOA that states "[m]y Agent shall not be liable for any loss that results from a judgment error that was made in good faith" make Daughter and Son's unauthorized transactions any less void. Since a "void" transaction is a nullity, title or ownership of the assets never passed to Daughter or Son. *See Herbert*, 152 S.W.3d at 354 (holding title of the sale proceeds never passed to the joint account, where principal orally instructed agent to make such deposits and DPOA contained no provision expressly authorizing the transaction).

Points 3 and 5 are granted. The transfers of Mother's assets and property to Daughter and Son under the DPOA are void, and those assets belong to the Estate. Because our resolution of these points is dispositive of points 4, 6, 7, and 8, we need not address those points.

### *Points 1 and 2: Deed Reformation*

In point 1, the Estate claims the trial court misapplied the law in reforming the original warranty deed to the Lilac Lane Property in favor of Daughter because the trial court's "inherent equitable powers" do not provide a basis to reform the deed since Daughter did not assert any claim where the remedy of reformation could be granted and the issue was not tried by the express or implied consent of the parties. We agree. Because our resolution of this point is dispositive of point 2, we need not address point 2.[10]

"Reformation of a written instrument is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake." ***Rowland v. Quevreaux, Tr. of Keith A. Quevreaux Revocable Tr. u/t/a Dated July 23, 2012***, 621 S.W.3d 665, 668 (Mo. App. W.D. 2021) (quoting ***Ethridge v. TierOne Bank***, 226 S.W.3d 127, 132 (Mo. banc 2007)). "While reformation is 'an extraordinary equitable remedy,' it is nevertheless available upon a showing that, due to either fraud or mutual mistake, 'the writing fails to accurately set forth the terms of the actual agreement or fails to incorporate the true prior intentions of the parties.'" ***Lunceford v. Houghtlin***, 170 S.W.3d 453, 464 (Mo. App. W.D. 2005) (quoting ***Elton v. Davis***, 123 S.W.3d 205, 212 (Mo. App. W.D. 2003)).

The trial court based its reformation of the warranty deed on a mutual mistake by the parties. But Daughter did not assert a claim of mutual mistake. Indeed, the trial court explicitly found that "[Daughter] has not specifically asserted a claim seeking reformation of the [Lilac Lane Property] deed[.]" The trial court nonetheless reformed the warranty deed to the Lilac Lane Property using "its inherent equitable powers."

---

[10] Point 2 argues the trial court's reformation of the deed was an abuse of discretion essentially for the same reasons it was a misapplication of law.

"Generally, a court is without authority to enter a judgment which grants relief beyond that which was requested in the petition." ***Colbert v. State, Family Support Div.***, 264 S.W.3d 699, 701 (Mo. App. W.D. 2008). While Missouri courts are restrained from deciding an unpleaded factual issue, a court of equity can grant any relief warranted by *pleaded* issues whether or not it was specifically included in the prayer for relief, but *only* if that relief is fully supported by facts, which were either pleaded or tried by consent.[11] ***Id.*** at 702.

In the absence of pleadings requesting such relief, the trial court may reform a deed where the issue is tried by implied consent.[12] ***Lunceford***, 170 S.W.3d at 464-65. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 55.33(b) Missouri Court Rules (2022). In this case, there was no express consent to try the issue of reformation based on mutual mistake. Thus, the only basis by which the trial court could have granted reformation is if the issue was tried by the implied consent of the parties.

A party implicitly consents to try an un-pleaded issue when evidence is offered, without objection, bearing solely on that issue. ***Allen Quarries, Inc.***, 244 S.W.3d at 784. However, in order to fairly say a party has consented to try a new issue, such evidence must warn the party that the new issue is being injected. ***In Estate of McKenna***, 500 S.W.3d 850, 861 (Mo. App. E.D. 2016). Therefore, the evidence at issue cannot be relevant to any other issue before the trial court. ***Id.***

Here, the record does not demonstrate the Estate implicitly consented to try the reformation issue. In fact, counsel for the Estate *objected* to testimony about whether

---

[11] The power of a court, acting in law or equity, to "enter a judgment rests on a pleading which states the theory of the case sufficiently to inform the adversary and the court the questions presented for decision." ***Osterberger v. Hites Const. Co.***, 599 S.W.2d 221, 230-31 (Mo. App. E.D. 1980). "Equity may shape the *remedy* to meet the demands of justice without rigid adherence to any determined form, so long as the demands of justice are not, under the given circumstances, incompatible with fairness to the adversary." ***Id.*** (emphasis added).

[12] The purpose of a pleading is to limit and define the issues to be tried and to put the adversary on notice of those issues. ***Allen Quarries, Inc. v. Auge***, 244 S.W.3d 781, 783 (Mo. App. S.D. 2008). "It is axiomatic that a trial court cannot grant judgment on a cause of action not pleaded." ***Id.***

mischaracterizing a grantee as grantees would be fatal to a warranty deed because it was outside the scope of the pleadings:

> Q.    In your experience, would -- would mis- --mischaracterizing a grantee as grantees, would that be fatal to this warranty deed?
>
> [Estate's Counsel]: Objection. Speculation, Your Honor. Outside the scope of pleadings. **There's no request for reformation of this deed.** (Emphasis added).
>
> THE COURT: What's the relevance of his opinion?
>
> [Daughter's Counsel]: Well, he's -- he's an expert in the law, and he's done these things.
>
> THE COURT: But what's the relevance of him expressing an opinion on this?
>
> [Daughter's Counsel]: That just by putting "grantees," it doesn't defeat the entire deed.
>
> THE COURT: Okay. All right. I'll overrule the objection.

Moreover, the evidence pertaining to the new issue, reformation based on mutual mistake, was relevant to the issues already before the court—namely, Daughter's defense to the Estate's claim for cancellation of the deeds. Thus, even if the Estate had failed to object to the evidence related to reformation of the deed, we cannot say the issue was tried by implied consent since the Estate had no notice that the issue was being tried. A trial court can only grant relief absent an express prayer when such relief is fully supported by facts which were either pleaded or tried by consent. *Feinberg v. Feinberg*, 924 S.W.2d 328, 330 (Mo. App. E.D. 1996). Because the issue of mutual mistake was neither pleaded nor tried by consent, the trial court did not have the "inherent equitable powers" to reform the deed based on mutual mistake.

Daughter's argument fails for a second reason. Even if Daughter had pleaded mutual mistake or the parties had agreed to try the issue, Daughter failed to meet her burden of establishing mutual mistake. While a court of equity can correct a mistake in a written instrument by reformation, it can only do so if the party seeking reformation proves by clear, cogent, and convincing evidence that there was a mutual mistake. *Singleton v. Singleton*,

659 S.W.3d 336, 342 (Mo. banc 2023). This requires the party seeking reformation to show that: 1) a preexisting agreement between the parties affected by the proposed reformation is consistent with the change sought; 2) a mistake was made in that the deed was prepared other than had been agreed upon; and, 3) the mistake was mutual, i.e., was common to both parties. *Morris v. Brown*, 941 S.W.2d 835, 840 (Mo. App. W.D. 1997). Even where there is a scrivener's error in a written instrument "Missouri courts have long held that, for the scrivener's mistake to constitute proof of a mutual mistake to warrant reformation, the scrivener must stand as an agent and act at the direction of both parties." *Singleton*, 659 S.W.3d at 343. By the time of trial, Mother was dead, and, therefore, unable to testify as to her intent. And the Estate took the position that Daughter did *not* act at Mother's direction—that all deeds and conveyances of the Lilac Lane Property by Daughter were "void, fraudulent conveyances and of no legal effect[.]" Thus, the only evidence of a mutual mistake came from Daughter. Because Mother died before trial and could not testify as to whether the mistake was mutual and because the Estate's position was that the conveyances to Daughter were fraudulent (not merely mistaken), there was not clear, cogent, and convincing evidence of a mutual mistake.

The trial court erred in reforming the warranty deed to the Lilac Lane Property based on a mutual mistake because no party asserted a claim of mutual mistake, the issue was not tried by implied consent, and there was not clear, cogent, and convincing evidence of a mutual mistake. Point 1 is granted.

## Conclusion

We vacate the portions of the trial court's judgment that (1) granted reformation of the warranty deed to the Lilac Lane Property in favor of Daughter and (2) denied the Estate's claims pertaining to all transfers of Mother's assets and property to Daughter and Son made under the

14

DPOA.  We remand for further proceedings consistent with this opinion.


MARY W. SHEFFIELD, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C. J. – CONCURS

GINGER K. GOOCH, J. – CONCURS