

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| DAVID BROY, ET AL., | ) | No. ED111275 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| | ) | 19SL-PR00146 |
| v. | ) | |
| | ) | |
| DIANE BROY, | ) | Honorable Ellen Sue Levy |
| | ) | |
| Appellant. | ) | Filed: July 30, 2024 |

**Introduction**

Diane Broy appeals the trial court's judgment entered in favor of her siblings, David Broy and Lisa Lyon, awarding damages on their claim that Diane breached her fiduciary duties as their mother's attorney in fact pursuant to a durable power of attorney and granting their request for a constructive trust.[1] We affirm in part and reverse in part the decision of the trial court.

**Factual Background**

The facts which led to the underlying suit, as presented at trial and found by the trial court in its judgment, are as follows:[2]

---

[1] Because the parties share a last name, we use their first names for brevity and to avoid confusion. No familiarity or disrespect is intended.
[2] Diane does not challenge on appeal the trial court's findings of material facts that led to the underlying suit.

1

Diane, David, and Lisa are the only three children of their mother ("Mother"). Following the passing of the parties' father and Mother's husband in 2013, the parties began assisting Mother with both personal and financial matters due to Mother's deteriorating mental condition. However, in April 2015, Diane took over sole management of Mother's finances and expressed to David and Lisa the need for Mother to sign a durable power of attorney. On July 9, 2015, unbeknownst to David and Lisa, Mother executed a durable power of attorney ("DPOA") naming Diane as her attorney in fact. She also executed a beneficiary deed on her home naming Diane, David, Lisa, and Lisa's oldest son as equal beneficiaries. At that time, Mother had a valid will and other previous beneficiary designations in place naming Diane, David, and Lisa as equal beneficiaries of her estate.

Prior to the execution of the DPOA, Diane assisted Mother with making certain changes to various banking accounts, including executing a new transfer upon death beneficiary application for an account with Wells Fargo and adding Diane as a co-owner to a US Bank money market account. The Wells Fargo beneficiary application altered the percentages of the transfer upon death apportionments from equal divisions of 33.33% per child, to 34% for Diane and 33% each for David and Lisa. At that time, Mother also received an inheritance of approximately $300,000; Mother stated her intention to distribute some portion of the inheritance equally to each of her children. Accordingly, David took Mother to the bank to facilitate the transfer; Mother transferred $50,000 to David at that time and left instructions that Diane and Lisa were also to receive $50,000 each. Diane was upset with David for taking Mother to the bank and very shortly after scheduled the appointment to execute the DPOA.

By spring of 2016, Mother's health was continuing to decline, requiring multiple hospitalizations. In September, Diane took Mother to Commerce Bank to open a new money

market account with Diane listed as the primary owner and tax identification contact, and Mother listed as a joint owner. The initial deposit was $83,161.14, which constituted the final distribution of the inheritance Mother had received the year before.

In October 2016, a deposit of $70,000 was made into the new Commerce Bank money market account. The deposit was made via a cashier's check from Mother's US Bank money market account. In November 2016, another deposit of $7,343.60 was made, the proceeds of which originated from Mother's retirement assets payout from Wells Fargo.

On May 23, 2017, Diane transferred $36,000 from the Commerce Bank money market account to her personal account at Commerce Bank. On August 4, 2017, Diane transferred an additional $41,000 from the Commerce Bank money market account to her personal account.

In September 2017, Mother suffered a brain bleed and was placed on life support. After consulting with doctors, the parties decided to remove Mother from life support on October 2, 2017. Diane requested that they remove the life support at noon that day, as she needed to "run errands" first. That morning, prior to Mother's death, Diane transferred $70,000 from the Wells Fargo account into the Commerce Bank money market account. Diane also deposited dividend checks equaling a total of $156.70 into the Commerce Bank money market account.

Following her death, Mother's will, which directed that her estate was to be distributed equally among her children, was never probated at the direct request of Diane. However, Diane frequently expressed to her siblings that she intended to equalize Mother's accounts, including the Commerce Bank money market account—in accordance with Mother's wishes—once Mother's outstanding debts were paid and each of the children were reimbursed for any expenses they had previously covered. After Diane repeatedly failed to make good on her assurances, David and Lisa filed a petition for an accounting in January 2019, and an amended petition in

3

June 2020 alleging breach of fiduciary duty for self-dealing and failing to maintain Mother's estate plan, as well as unjust enrichment, for which they sought a constructive trust.

At trial, Diane testified in her defense that her actions were authorized under the DPOA and that the transfers made from the Commerce Bank money market account to her personal accounts in May, August, and October 2017 were reimbursements for loans, expenses and caregiving services rendered. While Diane testified that her mother had intended that Diane be paid for her caregiving, Diane presented no contract or other evidence proving such an agreement. Diane testified that she was aware that Mother wanted her estate to be split equally among the children and that Diane always intended to equalize any remaining assets after the accounts had been reconciled, but that the siblings were unable to agree upon a time to meet in order to do so. Alternatively, David and Lisa testified that Diane refused to provide them with any documents related to Mother's accounts, investments, tax information, debt, etc. Diane testified that she retained counsel after David threatened to file criminal charges against her, and that she had previously been instructed by counsel to keep the DPOA private from her siblings. Diane admitted that she closed the Commerce Bank money market account and transferred the money to another account in her name after David and Lisa subpoenaed the bank records.

Following a bench trial, the trial court found that Diane had breached her fiduciary duties to Mother by engaging in self-dealing and failing to maintain Mother's estate plan by improperly commingling expenses and by removing and retaining sums of money from Mother's accounts. The court further found that Diane had failed to maintain Mother's estate plan, as evidenced by Mother's will and other beneficiary provisions indicating Mother's intent to distribute her estate equally, and by Diane's own admissions that she knew Mother wanted her estate to be divided equally among the siblings. The trial court determined that David and Lisa were Mother's

"successors in interest" as defined by Section 404.717.6, and that they had been damaged by Diane's willful misconduct. The trial court granted $40,992.06 in damages to David and $51,664.40 in damages to Lisa. While the trial court denied David and Lisa's claim of unjust enrichment, the court determined that Diane had failed to rebut the presumption that her 2016 and 2017 caregiving services were gratuitous, and thus that the $54,313.00 with which she had allegedly compensated herself was improperly paid and retained. The court imposed a constructive trust of $36,208.66—$18,104.33 each for David and Lisa—which equated to two thirds of the sum that would have otherwise been split equally among the siblings. Finally, the trial court awarded attorney's fees to David and Lisa in the amount of $55,753.83.

This appeal follows.

### Standard of Review

An appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Ivie v. Smith*, 439 S.W.3d 189, 198–99 (Mo. banc 2014); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Appellate courts apply *de novo* review to questions of law decided in court-tried cases. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012).

### Points I & IV

In her first and fourth points on appeal, Diane argues that the trial court erred in finding her liable for breach of fiduciary duty for failing to preserve Mother's estate plan and for self-dealing because David and Lisa do not qualify as "successors in interest" under Section 404.717 and therefore had no standing to bring such a claim. Because both points address the issue of

standing as related to Section 404.717, we address these points together.[3] Section 404.717.5

provides, in pertinent part that:

> As between the principal and any attorney in fact or successor, if the attorney in fact or successor undertakes to act, and if in respect to such act, the attorney in fact or successor acts in bad faith, fraudulently or otherwise dishonestly, or if the attorney in fact or successor intentionally acts after receiving actual notice that the power of attorney has been revoked or terminated, and thereby causes damage or loss to the principal or to the principal's successors in interest, such attorney in fact or successor shall be liable to the principal or to the principal's successors in interest, or both, for such damages…

Section 404.717.6 was amended in 2016 to provide a definition for successors in interest:

> For purposes of this section, the principal's "successors in interest" shall include those persons who can prove they have been damaged as a result of the actions of the attorney in fact or successor attorney in fact, such as a conservator of the principal or a personal representative of a deceased principal. If more than one person claims a recovery under this section the court shall determine the priority of their respective claims.

Diane contends that the legislature's inclusion of express enumerated examples of conservators

and personal representatives thereby strictly confines such "successors in interests" to only those

parties who would be akin to a conservator or personal representative. Diane argues that David

and Lisa do not fall into any such party and are therefore barred from bringing a claim under

Section 404.717. We review questions of statutory interpretation *de novo*. *Dickemann v. Costco*

*Wholesale Corp.*, 550 S.W.3d 65, 67 (Mo. banc 2018).

"The primary goal of statutory interpretation is to discern the legislature's intent as

evidenced by the text and to consider the words in their plain and ordinary meaning." *Holmes v.*

*Steelman*, 624 S.W.3d 144, 149 (Mo. banc 2021). "Absent a statutory definition, the primary rule

of statutory interpretation is to give effect to legislative intent as reflected in the plain language

of the statute." *Oak Creek Whitetail Ranch, L.L.C. v. Lange*, 326 S.W.3d 549, 550 (Mo. App.

---

[3] All Section references are to the Missouri Revised Statutes (2019).

E.D. 2010) (emphasis added); *Brinker Mo., Inc. v. Dir. of Revenue*, 319 S.W.3d 433, 437-38 (Mo. banc 2010). When the legislature construes its own language by providing definitions, that construction supersedes the commonly accepted dictionary or judicial definition, and it is binding on the courts. *State ex rel. Jackson v. Dolan*, 398 S.W.3d 472, 479 (Mo. banc 2013). We resort "to other rules of statutory interpretation *only when the plain meaning of the statute is ambiguous or defeats the purpose of the statute.*" *Ivie*, 439 S.W.3d at 202 (emphasis added). "When interpreting a statute, 'no portion of it is read in isolation, but rather is read in context [of] the entire statute, harmonizing all provisions.'" *Antioch Cmty. Church v. Bd. Of Zoning Adjustment of City of Kansas City*, 543 S.W.3d 28, 35 (Mo. banc 2018) (quoting *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 4 (Mo. banc 2012)). Finally, we must interpret statutes to avoid unreasonable, oppressive, or absurd results. *Townsend v. Jefferson Cnty. Sheriff's Dep't*, 602 S.W.3d 262, 265 (Mo. App. E.D. 2020); *Aquila Foreign Qualifications Corp.*, 362 S.W.3d at 4. Statutory interpretation should not be hyper-technical, but reasonable and logical. *Ivie*, 439 S.W.3d at 203.

Here, the legislature has provided the courts with a definition for "successors in interest." We must first start by analyzing the plain meaning of this definition. *Id.* at 202. Should the plain meaning be undiscernible or ambiguous, we may then turn to doctrines of statutory interpretation to aid in our analysis. *Id.* However, looking closely at the wording used by the legislature, we find that the plain language meaning is unambiguous and there is thus no requirement to further analyze the language of the statute by applying supplementary doctrines of statutory interpretation.

First, the legislature's choice to start the definition of Section 404.717.6's "successors in interest" with "shall include"—as opposed to "shall mean" or "shall be"—indicates that the

definition is designed to be widely applicable and nonexclusive. "While the plain meaning of the word 'include' may vary according to its context in a statute, it is ordinarily used as a term of enlargement, rather than a term of limitation." *State ex rel. Nixon v. Estes*, 108 S.W.3d 795, 800 (Mo. App. W.D. 2003); *see also Kieffer v. Kieffer*, 590 S.W.2d 915, 918 (Mo. banc 1979) ("The term 'including' is sometimes ambiguous and its meaning may vary according to the context of the statute in which it appears. However, generally the term is one of enlargement rather than limitation."). The Western District in *Short v. S. Union Co.* discussed the issue thoroughly, finding that "'include' in the context of statutes has almost universally been construed by Missouri courts as a term of enlargement, as providing an illustrative, non-exclusive, example, or as both." *Short v. S. Union Co.*, 372 S.W.3d 520, 532-33 (Mo. App. W.D. 2012) (citing *Estes*, 108 S.W.3d at 800 (interpreting "include" as used in Section 407.010(7) as a term of enlargement to refer to "any trade or commerce directly or indirectly affecting the people of this state" and not as an expression of legislative intent to mean *only* economic activity directly or indirectly affecting the people of this state)); *In re S.J.S.*, 134 S.W.3d 673, 677 (Mo. App. E.D. 2004) (interpreting "include" as a term of enlargement as used in Section 453.080, which states that lawful and actual custody "shall include a transfer of custody pursuant to the laws of this state," rather than as a legislative expression of "the exclusive means by which a party can exercise lawful and actual custody of a child"); *Kieffer*, 590 S.W.2d at 918 (interpreting "including" as a term of enlargement as used in Section 452.355, which states that, in considering an award of attorney's fees, a court may award reasonable fees "after considering all relevant factors including the financial resources of both parties"); *Union Elec. Co. v. Cuivre River Elec. Coop., Inc.*, 571 S.W.2d 790, 794 (Mo. App. E.D. 1978) (interpreting "including" as a term of enlargement as used in Section 1.100(1), which states that the population of a political

subdivision based on the last decennial census shall control "for the purpose of representation or other matters including the ascertainment of the salary of any county officer" and noting that "in most instances the term 'including' is one of enlargement"); *St. Louis Cnty. v. State Highway Comm'n*, 409 S.W.2d 149, 152–53 (Mo. banc 1966) (interpreting "to include" as a term of enlargement as it was used in a ballot proposition which stated that "said highways" are "to include" certain expressways therein designated).

The Western District in *Short* determined that the legislature's use of "shall include" to start a statutory definition indicates the intention to enlarge the meaning of the term being defined, rather than to provide a narrow and exclusive meaning. *Short*, 372 S.W.3d at 533. The court in *Short* found that, in reading the term "shall include" as one of enlargement rather than limitation, the enumerated terms following "shall include" are not rendered meaningless, but they rather serve as *nonexclusive* examples. *Id.* The court determined that, had the legislature intended the definition to be exclusive and limiting, they could have chosen to use "shall mean" or "shall be defined for purposes of this statute" in order to limit the definition to only those terms provided. *Id*. The court found no reason to construe the phrase so narrowly, as to do so would unnecessarily and unreasonably limit the statute.

Similar to the Western District's finding in *Short*, there is no indication from the wording of Section 404.717 that the legislature intended that the phrase "shall include" to be construed as anything other than a term of enlargement or as prefacing an illustrative example, as to do so would unnecessarily and unreasonably limit the statute. Given the extensive case law interpreting "shall include" as a term of enlargement, it would be inconsistent for this Court to hold otherwise and find it to be limiting. This finding is also consistent with the United States Supreme Court's interpretation of "include," as well as "such as." In *Campbell v. Acuff-Rose*

9

*Music, Inc.*, the Supreme Court found that "including" and "such as" served only as an "illustrative and not limitative" function, and that the terms should only provide "general guidance" about the examples listed. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).

Furthermore, this holding and Missouri's extensive case law interpreting "shall include" and "such as," is congruent with basic grammar rules, including the use of commas to offset nonrestrictive phrases but not restrictive phrases. "A nonrestrictive clause is one that does not serve to identify or define the antecedent noun, but rather merely adds information about the person, thing, or idea to which the phrase or clause refers." Peter Jeremy Smith, *Commas, Constitutional Grammar, and the Straight-Face Test: What If Conan the Grammarian Were A Strict Textualist?*, 16 CONST. COMMENT. 7, 9 (1999) (internal quotation and citations omitted). Accordingly, nonrestrictive clauses *must* be set off by commas. *Id*. Nonrestrictive phrases give added information that do not alter the essential meaning of the sentence if the clause is omitted. MADELINE SEMMELMEYER & DONALD O. BOLANDER, *Instant English Handbook,* 216-17 (1993). Essentially, a nonrestrictive phrase is a subordinate clause that does not place any restrictions on, and is not essential to, the meaning of the sentence, effectively functioning more like an appositive or parenthetical expression. *Id*. In other words, nonrestrictive clauses are designed to be thrown-in-remarks—which is the reason why the nonrestrictive clause is set off by commas. *Id*. Alternatively, a restrictive clause, which is essential to the meaning of the word being modified, should not be set off by commas. Lance Phillip Timbreza, *The Elusive Comma: The Proper Role of Punctuation in Statutory Interpretation*, 24 QLR 63, 91 (2005).

While, "[o]rdinarily, it is presumed that, when the legislature amends a statute, the legislature intended to effect some change in the existing law…this is not always the case. The

10

purpose of a particular change may be to clarify – not change – the existing law." *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 607 (Mo. banc 2019) (citing *Mid-Am. Television Co. v. State Tax Comm'n of Mo.*, 652 S.W.2d 674, 679 (Mo. banc 1983)).

Prior to the 2016 amendment, Section 404.717.5's provision on damages had only been cited twice before—to collect attorney's fees together with damages from a breach of fiduciary duty claim. In both cases, the suit was brought by children of the decedent-principal. The children were neither personal representatives nor conservators. *See Taylor-McDonald v. Taylor*, 245 S.W.3d 867 (Mo. App. S.D. 2008) (daughters of father-principal filed a complaint against their brother and sister-in-law, as attorneys in fact to principal, to recover property and funds daughters claimed should have been theirs through inheritance from their father); *Antrim v. Wolken*, 228 S.W.3d 50 (Mo. App. E.D. 2007) (brother sued sister alleging she breached her fiduciary duty under power of attorney for mother by naming herself as transfer-on-death beneficiary of mother's assets). As the legislature is presumed to know the law at the time of its enactment or amendment, it is not unreasonable to determine that the legislature sought to change the law by *expanding* the types of persons who could bring a claim under Section 404.717.5 beyond more than just beneficiaries.

However, it is also reasonable that the legislature sought to clarify the statute by creating a statutory definition that was expansive in its application so that claims could be brought by parties other than beneficiaries, such as conservators and personal representatives, in recognition that such parties may be damaged—although indirectly via their legally imposed relationship and duties—by the misconduct. While a beneficiary experiences actual damages that result in loss of property—making them a more obvious contender for damages—a conservator's or personal representative's damages are indirect in that such persons will not be the final recipient of the

11

money or assets misused by the attorney-in-fact, as they are only acting for the benefit of the principal and the principal's successors in interest.[4] On the other hand, a beneficiary is directly and actually damaged by the actions of an attorney-in-fact, because, should the attorney-in-fact not be held accountable for misuse of the principal's funds, such beneficiaries would be deprived of property otherwise owed to them but for the attorney-in-fact's actions. The statute does not otherwise indicate that the legislature intended to limit the damages remedy to only personal representatives and conservators while excluding those directly damaged.[5]

Therefore, the plain language of Section 404.717.6 is not ambiguous, as it clearly sets out a definition of "successors in interest" as those persons who can prove they have been damaged by the actions of the attorney in fact. The inclusion of nonexhaustive and illustrative examples does not change this definition, as the legislature's language is that of enlargement rather than limitation. Rather than intending to limit the persons who can seek damages for an attorney in fact's misconduct to only the enumerated examples, the legislature's plain language points towards an acknowledgment that such classes of indirectly damaged persons like conservators or personal representatives can also seek damages for the beneficiaries of the principal.

Accordingly, Points I and IV are denied.

---

[4] It should be further noted that this separation from any personal consequences could disincentivize personal representatives or conservators from pursuing an action for damages beyond that which is expected of them within the probate code. While Diane's brief suggested other such persons who could be included within the majority's interpretation—another attorney in fact, a principal's court-appointed next friend, a guardian, a bankruptcy trustee, or another person who has legal authority and control over the principal's property—such examples are likewise only indirectly damaged and potentially lack the motivation of real, actualized, and personal damages.

[5] If David and Lisa do not have standing under Section 404.717, this could render Section 404.727 potentially meaningless. 404.727 gives family members and interested persons a right to seek an accounting of the principal's assets. Without standing to bring a Section 404.717 action for damages, such parties would be denied any such remedy to pursue should the accounting reveal misconduct.

**Point II**

In her second point on appeal, Diane argues that the trial court erred in finding her liable for breach of fiduciary duty for failing to preserve Mother's estate plan, because "an unprobated will, generalized concepts, and statements made by Diane and her attorney… are not types of 'estate plans'" under Section 404.714. Diane's arguments are misplaced and have no basis in law because a testator's intent can be used to define the scope of an attorney in fact's duties.

An "estate plan," for purposes of our analysis, is "any estate plan which the principal may have in place, including, but not limited to, arrangements made by the principal for disposition of assets at death through beneficiary designations, ownership by joint tenancy or tenancy by the entirety, trust arrangements or by will or codicil." Section 404.714.1. However, Diane contends that, for a will to be effective, it must be presented for and admitted to probate, citing to Section 473.050.5 of the probate code. Thus, according to Diane, because the will in this case was never admitted to probate, it never had legal force and therefore cannot be used to prove intent of a "planned estate." Such reasoning goes against the established case law in Missouri.

In *In re Estate of Qualls*, the court highlighted the importance of the testator's intent at the time of the will's execution in determining whether the attorney-in-fact exceeded the scope of their authority. 436 S.W.3d 743, 748-49 (Mo. App. W.D. 2014). The court noted that "while a will speaks from the death of the testator . . . when it is to be construed for the purpose of ascertaining the testator's intention, the court should consider his situation and the circumstances surrounding testator at the time of the execution of the will." *Id.* at 748 (quoting *Shackelford v. Fifer*, 269 S.W.2d 30, 33 (Mo. 1954)). Other cases have also emphasized the rule of interpreting the will at the time it was executed, considering the surrounding circumstances, without regard to

13

subsequent developments. *See Lansdale v. Dearing*, 328 S.W.2d 699, 702 (Mo. 1943); *Estate of Ihl v. Oetting*, 682 S.W.2d 865, 867 (Mo. App. E.D. 1984).

More important, however, is that accepting Diane's argument as valid would allow her to ignore the explicit wishes of Mother to distribute the estate among the three children equally. At the time Diane made the money transfers, she could not have known that the will would not be probated. Therefore, she should have acted according to the will's instructions to maintain the estate so that it could have and would have been divided equally among the children upon Mother's death, and not to appropriate the funds for herself via her attorney in fact authority. Allowing Diane to escape liability on the unsupported argument that a will is insufficient to show a testator's intent until after the will has been probated—which in this case failed to happen at Diane's own insistence—would encourage attorneys in fact to commit fraud against principals and beneficiaries, gravely harming the well-settled norms of fiduciary relationships.

Diane next alleges that post-death communications and her admissions cannot constitute an estate plan and that there are no other written documents evidencing the existence of such a plan. These assertions miss the mark. Post-death communications and Diane's admissions were used to demonstrate her *acknowledgement* of the established estate plan when she was Mother's attorney in fact. There was never any suggestion that such communications would be sufficient to establish the estate plan itself without further evidence. While the existence of the will is more than enough evidence on the matter, the siblings' various acknowledgments of their Mother's wishes to divide the estate equally further reinforce the fact that a well-known estate plan was in place prior to Mother's death and there was never any indication that Mother wanted to favor Diane over the other siblings.

Point II is denied.

14

**Points III & V**

In her third and fifth points on appeal, Diane argues that the trial court erred in finding her liable for breach of fiduciary duty for failing to preserve Mother's estate plan and for self-dealing because the failure to reconcile assets took place when no fiduciary relationship existed, and because the DPOA authorized Diane to change Mother's estate plans, make or revoke gifts, and take other actions at Diane's sole discretion.

Diane's argument that her actions were permissible self-gifts under the DPOA is unavailing because the money transfers at issue cannot be characterized as gifts, and therefore the corresponding gift provisions in the DPOA are irrelevant. Under Missouri law, *inter vivos* gifts require three elements: "1) the donor's present intent to make a gift; 2) the donor's delivery of the property to the donee; and 3) the donee's acceptance of the gift, whose ownership takes effect immediately and absolutely." *Clippard v. Pfefferkorn*, 168 S.W.3d 616, 618 (Mo. App. E.D. 2005) (citations omitted). The trial court found that Diane lacked the requisite intent to make and accept the transfers as gifts. Indeed, Diane testified that the transfers were not intended to be made as gifts and were instead meant to cover Mother's expenses which Diane claimed to have paid. Also significant are Diane's subsequent acknowledgements that the estate was to be distributed equally, which further supports the lack of intent to make a gift.

Even if we assume that the transfers were indeed gifts, Diane's argument would still be unfounded. Under Missouri law, "[a]n attorney in fact . . . is under a duty to act in the interest of the principal and to avoid conflicts of interest that impair the ability of the attorney in fact so to act." Section 404.714.1. Additionally, "an attorney in fact . . . shall exercise the authority granted in a power of attorney with that degree of care that would be observed by a prudent person dealing with the property and conducting the affairs of another." *Id*. All rights and duties of the

15

attorney in fact must therefore be viewed in light of the overriding duty to act in the best interests of the principal and avoid conflicts of interests. Section 404.714.1. Furthermore, while the law contains general prohibitions against self-gifting unless expressly authorized, this prohibition also covers "any action that would result in assets eventually going to the attorney-in-fact unless the language of the DPOA expressly allows it." *Mintner v. Mintner*, 530 S.W.3d 534, 541 (Mo. App. W.D. 2017). Notably, the DPOA's authority, while broad, does not contain an express provision authorizing Diane to make changes to Mother's estate plan. Accordingly, Diane's transferring of money to her personal accounts, in direct contradiction of Mother's written wishes as set forth in her will and known to Diane at the time of the transfers, creates a strong presumption that she violated Mother's best interests. As Diane failed to present sufficient evidence to rebut this presumption, the trial court correctly found such behavior to have breached Diane's fiduciary duties to Mother.

Finally, Diane contends that the failure to reconcile the cash accounts took place after Mother's death and thus cannot have been a breach of any fiduciary duties owed to Mother, as such duties terminate upon death. However, Diane misrepresents the conclusions of the trial court. The court found that it was primarily Diane's actions before the death—the multiple money transfers to Diane's accounts prior to and on the morning of Mother's death—that constituted the breach of fiduciary duties.

However, Section 404.714.9 requires that

On the death of the principal, the attorney in fact shall follow the instructions of the court, if any, having jurisdiction over the estate of the principal, or any part thereof, and shall communicate with and be accountable to the principal's personal representative, or if none, the principal's successors; and *the attorney in fact shall promptly deliver to and put in the possession and control of the principal's personal representative or successors any property of the principal* and copies of any records of the attorney in fact relating to transactions undertaken in the principal's behalf that are deemed by the personal representative

16

or the court to be necessary or helpful in the administration of the decedent's estate.

Therefore, the failure to reconcile the accounts was a breach of the duty to "deliver to and put in the possession and control of the principal's . . . successors any property of the principal." Section 404.714.9. Because the statute explicitly mentions that the attorney in fact *shall* complete duties upon the death of the principal, this duty must logically survive the principal and accordingly applied to Diane's failure to reconcile the accounts following Mother's death. For these reasons, we find the trial court correctly found Diane liable for breach of fiduciary duties to Mother.

Points III and V are denied.

### Points VI & VII

In her sixth and seventh points on appeal, Diane argues that the trial court erred in imposing a constructive trust on money Diane improperly paid herself for providing caregiving services to Mother because there was insufficient evidence of a *res* upon which the trust could be imposed.[6]

A constructive trust is a "fluid, flexible device which may be employed to remedy many different types of injustice." *Brown v. Brown*, 152 S.W.3d 911, 917 (Mo. App. W.D. 2005). "The touchstone for the imposition of a constructive trust is injustice or unfairness, which may take the form or be the product of fraud (actual or constructive), abuse of fiduciary duty or confidential relationship, undue influence, or unjust enrichment." *Id*. While "[t]he forms and

---

[6] In Missouri, caregiving services rendered by a child to a parent are presumed to be gratuitous unless rebutted by clear and convincing evidence showing an agreement between the parties that the services are to be compensated. *Vosburg v. Smith*, 272 S.W.2d 297, 301 (Mo. 1954). The trial court found that no such agreement existed between Mother and Diane for the caregiving services Diane claimed she rendered in 2016 and 2017, and that Diane therefore improperly paid herself a total of $54,313.00 which would have otherwise been part of Mother's estate that was to be divided equally among the siblings. These payments and retention of funds were a breach of Diane's fiduciary duties to maintain the estate plan and avoid self-dealing. Diane does not contest this finding on appeal.

varieties of constructive trusts are practically without limit" *id*. (quoting *Durwood v. Dubinsky*, 361 S.W.2d 779, 790 (Mo. banc 1962)), "the very essence of the remedy of a constructive trust is the identification of specific property or funds as the res upon which the trust may be attached." *Ralls Cnty. Mut. Ins. Co. v. RCS Bank*, 314 S.W.3d 792, 765 (Mo. App. E.D. 2010). "To establish a constructive trust, evidence must be unquestionable in character and so clear, cogent and convincing as to exclude every reasonable doubt in the mind of the trial court." *Id*. (quoting *Dayton Constr., Inc. v. Meinhardt*, 882 S.W.2d 206, 210 (Mo. App. W.D. 1994)).

We find that the evidence in this case was insufficient to support the imposition of a constructive trust. The judgment does not reference a distinct set of funds in the amount improperly retained by Diane set apart from Diane's other funds. In other words, the judgment failed to identify the *res* and instead granted an amount of damages, determined by the court, to David and Lisa on their request to impose a constructive trust "for such amount against the assets of [Diane]." (emphasis added). David and Lisa only alleged that the *res* is contained within a specific one of Diane's personal money market accounts for the first time on appeal. Trial testimony regarding such an account was vague and unclear, and there was thus insufficient evidence to support the imposition of a constructive trust.

However, a constructive trust in this case is unnecessary, as David and Lisa should have been awarded legal damages for their claim under Section 404.717. Section 404.717.5 states that an attorney-in-fact's fiduciary breach shall render such attorney-in-fact "liable to . . . the principal's successors in interest . . . for such damages, together with reasonable attorney's fees…" Having established both that Diane (1) breached her fiduciary duty to Mother by improperly compensating herself for Mother's gratuitous care and (2) that David and Lisa are Mother's "successors in interest," they qualify for legal damages. Section 404.717. Exercising

18

this Court's discretion to "give such judgment as the court ought to give" to "dispose finally of the case," we order Diane to pay David and Lisa $18,104.33 each. See Rule 84.14.

## Conclusion

For the foregoing reasons, we affirm the trial court's decision in relation to Points I, II, III, IV, and V. We reverse on Points VI and VII and enter judgment in accordance with our decision as discussed above.[7] We remand for determination of appellate attorneys' fees.


_Renée D. Hardin-Tammons_
Renée D. Hardin-Tammons, J.

Kurt S. Odenwald, P.J., concurs, and Michael E. Gardner, J., dissents in a separate opinion.

---

[7] David and Lisa filed a motion for attorneys' fees incurred in defending this appeal, which we took with the case. Because Section 404.717.6 states that the "attorney in fact… *shall be liable* to the principal or to the principal's successors in interest… for such damages, *together with reasonable attorney's fees*," we grant the motion. (emphasis added). "While appellate courts have the authority to award attorney fees on appeal, because the trial court is better equipped to hear evidence and determine the reasonableness of the fee requested," we thus remand to the trial court to determine a reasonable award of attorneys' fees on appeal. *Brown v. Pfeiffer*, 682 S.W.3d 45, 55 n.5 (Mo. App. W.D 2024) (quoting *Gray v. Missouri Dept. of Corrections*, 635 S.W.3d 99, 108 (Mo. App. W.D. 2021)).



# In the Missouri Court of Appeals
# Eastern District

| | | |
|---|---|---|
| DAVID BROY, ET AL., | ) | No. ED111275 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Ellen Sue Levy |
| DIANE BROY, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 30, 2024 |

**OPINION DISSENTING IN PART AND CONCURRING IN PART**

I respectfully dissent in part and concur in part. With regard to the claim for breach of fiduciary duty under section 404.717.6, I disagree with the majority's construction of the statutory definition of "successors in interest." David Broy and Lisa Lyon are not "successors in interest" to the principal under that definition and do not have standing to bring this breach of fiduciary duty claim against Diane Broy as the attorney in fact. Therefore, I respectfully dissent from the majority's decision affirming the trial court's judgment in their favor on that claim. And while I concur with the majority's reversal of the constructive trust judgment because David and Lisa[1] failed to present sufficient evidence to support that claim, I respectfully dissent from the majority's entry of a money judgment in their favor under section 404.717 due to their lack of standing.

---

[1] I also use the parties' first names to avoid confusion, and no familiarity or disrespect is intended.

### *Standing Under Section 404.717*

It is undisputed that Diane's fiduciary duties under the durable power of attorney ("DPOA") were owed only to her mother, not to David and Lisa. The parties agree that for David and Lisa to have standing to recover damages and attorney fees from Diane for breaches of that duty, David and Lisa must be their mother's "successors in interest" as that term is defined in the Durable Power of Attorney Law. Section 404.717.6. Standing and statutory interpretation are questions of law subject to de novo review. *See Manzara v. State*, 343 S.W.3d 656, 659 (Mo. banc 2011); *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014).

The Durable Power of Attorney Law "codifies the concept that the relationship of principal and agent created by a power of attorney is by its nature one of trust and confidence, creating a fiduciary relationship and an obligation on behalf of the agent to act in the sole interest and for the sole benefit of the principal." *Mintner v. Mintner*, 530 S.W.3d 534, 541 (Mo. App. W.D. 2017) (internal quotation marks and citation omitted). An attorney in fact may be liable to the principal or the principal's "successors in interest" for damages, including attorney fees and punitive damages, if he or she "engages in willful misconduct or fraud or acts with willful disregard for the purposes, terms, or conditions of the power of attorney" and "causes damage or loss to the principal or to the principal's successors in interest." Section 404.717.5. The General Assembly added this subsection to the Durable Power of Attorney Law in 1997, but did not include a definition of "successors in interest" until 2016. The definition provides:

> For purposes of this section, the principal's "**successors in interest**" shall include those persons who can prove they have been damaged as a result of the actions of the attorney in fact or successor attorney in fact, such as a conservator of the principal or a personal representative of a deceased principal. If more than one person claims a recovery under this section the court shall determine the priority of their respective claims.

2

Section 404.717.6.  There are no cases interpreting this statutory definition.[2]

The goal when interpreting a statute is to ascertain the legislature's intent, which is found in the plain and ordinary meaning of the words used in the statute.  *See Ivie*, 439 S.W.3d at 202.  When the plain language "does not answer the current dispute as to its meaning[,]" the statute is deemed ambiguous and courts employ the canons of statutory construction to determine the legislature's intent.  *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 3-4 (Mo. banc 2012) (internal quotation marks and citations omitted).  Unlike the majority, I find there is ambiguity as to the scope of the definition of "successors in interest" in section 404.717.6.  *See id.* at 3 (finding statutory definition in context of sales tax exemption ambiguous as to scope).  That is, the plain language does not answer the current dispute as to whether the definition includes *anyone* who has "been damaged as a result of the actions of the attorney in fact" or whether it is limited to some extent by the examples listed therein: "such as a conservator of the principal or a personal representative of a deceased principal."

Turning to the canons of statutory construction, I must begin with the presumption that every word of a statute was included for a purpose and has meaning.  *Robinson v. Advance Loans II, L.L.C.*, 290 S.W.3d 751, 755 (Mo. App. E.D. 2009).  Courts are not permitted to interpret language in a way that would render other language in the same provision meaningless.  *Id*.  And the construction must strive to harmonize the provision with other provisions in the same act and *in para materia* with other statutes on similar subject matters.  *Doe v. St. Louis Cmty. Coll.*, 526 S.W.3d 329, 337 (Mo. App. E.D. 2017).  Under the maxim *noscitur a sociis*—"a word is known

---

[2] The terms "principal's successors" and "principal's successors in interest" are used throughout the Durable Power of Attorney Law and have been since its enactment in 1989.  *See, e.g.*, sections 404.705.2, 404.707.3, 404.710.4, 404.714.9, 404.719.1-2 and 404.727.6.  Those terms, however, are not defined anywhere in the Durable Power of Attorney Law, and there are no cases addressing their meaning.

3

by the company it keeps"—ambiguous language must be construed in the context of the other words used in the provision. *Id*. at 336-37. Similarly, the principle of *ejusdem generis*—"of the same kind"—instructs that "the scope and extent of more general words" must be determined by considering the "specific enumeration[s]" used in the provision. *Standard Operations, Inc. v. Montague*, 758 S.W.2d 442, 444-45 (Mo. banc 1988). That is, "the general words so used will be applicable only to things of the same general character as those which are specified." *State v. Lancaster*, 506 S.W.2d 403, 405 (Mo. 1974) (internal quotation marks and citations omitted). "Thus a document referring to 'horses, cattle, sheep and other animals' will usually be construed as including goats, but not bears or tigers." *Standard Operations*, 758 S.W.2d at 444.

Section 404.717.6 starts the definition of "successors in interest" with broad language, stating that it "shall include those persons who can prove they have been damaged as a result of the actions of the attorney in fact." If this definition did not go on to provide specific examples of such persons, then perhaps I could agree to a broader interpretation: that because David and Lisa suffered damages as a result of Diane's misconduct in the form of a reduced inheritance, they are successors in interest under the first part of the definition. But the legislature chose to include specific examples following this general language—"such as a conservator of the principal or a personal representative of a deceased principal"—and to ignore these examples would render them superfluous. *See Robinson*, 290 S.W.3d at 755 (rejecting a broad interpretation of language in a provision that would render meaningless the enumerations listed elsewhere in that provision). The specific enumerations here must be read as narrowing the scope of the more general group ("persons who . . . have been damaged") to those who are similar in general character to a principal's conservator or personal representative. *See id.*; *Lancaster*, 506 S.W.2d at 405.

4

Under the Durable Power of Attorney Law, "conservators" and "personal representatives" are "legal representatives." *See* section 404.703(5) (defining "legal representative" as "a decedent's personal representative, a guardian of a person or the conservator of the estate of a person, whether denominated as general, limited or temporary, or a person legally authorized to perform substantially the same functions"). Legal representatives have certain functions under the Durable Power of Attorney Law, including the authority to modify or terminate a grant of power in a DPOA and to petition the court for an accounting or for rulings regarding the principal's disability or incapacity. *See* sections 404.717.1(2) and 404.727.1-5. Under the Probate Code,[3] a personal representative is specifically tasked with administering a decedent's estate and "shall commence and prosecute all actions which may be maintained and are necessary in the course of his administration" of the decedent's estate. Section 473.270; *see also* section 472.010(26). The Probate Code also provides that a conservator is appointed by a court to manage the estate of a minor or a person with a disability and may "[p]rosecute or defend actions, claims, or proceedings . . . for the protection of estate assets." Section 475.130.6(14) RSMo (Cum. Supp. 2018); section 475.010(3) (Cum. Supp. 2018). Persons that might be similar in character to these legal representatives include another attorney in fact, a principal's court-appointed next friend, a guardian, a bankruptcy trustee or another person who has legal authority and control over the principal's property. But David's and Lisa's status as the principal's family, distributees or beneficiaries are not sufficiently similar.

While a decedent's family member often takes on the role of legal representative, there is nothing about David's and Lisa's status as the principal's children that itself makes them similar in character to a principal's conservator or personal representative. Nor does the fact that David

---

[3] The Durable Power of Attorney Law points to the Probate Code for a definition of personal representative. *See* section 404.703(7).

5

and Lisa may have had a claim to their mother's property by virtue of their status as "distributees" under the Probate Code (as their mother's heirs or as devisees under the will) or because they were designated as transfer-on-death beneficiaries. *See* section 472.010(9). "Distributees" have rights under the Probate Code and must follow certain procedures set forth in the Code, *see* section 473.613, as do designated transfer-on-death beneficiaries under the Nonprobate Transfers Law. *See* sections 461.001-.081. But neither have any representative roles or functions with respect to the administration or protection of the decedent's estate akin to what a principal's conservator or personal representative are legally authorized to do.

The legislature—certainly aware that persons in David's and Lisa's situation could suffer damages as a result of an attorney in fact's misconduct—could have foregone any specific enumeration in the definition of "successors in interest," thereby allowing anyone damaged by such misconduct to recover under section 404.717.5. But it did not do so. The legislature also could have included as examples of "successors in interest" the principal's family members or persons who claim inheritance from the principal (whether by virtue of their status as heirs, as devisees under a will or as transfer-on-death beneficiaries). But it did not do so. And, tellingly, these are all persons the legislature referred to elsewhere in the Durable Power of Attorney Law: subsections 1, 4 and 5 of section 404.727 authorize an adult member of the "principal's family," as defined in section 404.703(9), to petition the court for an accounting from the attorney in fact or to determine the principal's disability or incapacity; section 404.710.6(6) discusses an attorney in fact's powers to designate "beneficiaries" to receive property on the principal's death; section 404.727.2 provides that "distributees of a deceased principal's estate" can waive an accounting or approve an accounting without a hearing; and section 404.731.5 refers to "a member of the principal's family who may have a property right or claim against or an expectancy, reversionary

or other interest in the estate of the principal." The legislature's inclusion of language referring to the principal's family, distributees and beneficiaries in these other sections of the Durable Power of Attorney Law—coupled with its exclusion of that language in subsections 5 and 6 of section 404.717—is powerful evidence of the legislature's intent. *See Denbow v. State*, 309 S.W.3d 831, 835 (Mo. App. W.D. 2010). The omission indicates that the legislature did not intend for persons in the position of David and Lisa to be able to recover damages or attorney fees from an attorney in fact under section 404.717.5.

Because the majority finds no ambiguity in this definition, it eschews the need for the canons of construction that have led to my interpretation of section 404.717.6. Instead, the majority relies on the plain meaning of the phrases "shall include" and "such as" as terms of enlargement, not limitation. While those terms are generally meant to indicate that a list that follows is illustrative only and not exclusive, their mere presence in section 404.717.6 does not support the majority's conclusion that nothing in the statutory definition can be read as a limitation of any kind. That conclusion ignores the structure of the sentence at issue: successors in interest "shall include those persons who can prove they have been damaged as a result of the actions of the attorney in fact or successor attorney in fact, such as a conservator of the principal or a personal representative of a deceased principal." Section 404.717.6. To be sure, "shall include" introduces a broad group of persons deemed to be successors in interest, but the sentence does not end there. It continues with "such as" followed by a list of examples.[4] This is not an exclusive list of "successors in interest," but the list is nevertheless *limiting* in the sense that it is a subset of the

---

[4] Any suggestion by the majority that because there is a comma preceding "such as" the rules of grammar dictate that what follows "is not essential to, the meaning of the sentence" and is "designed to be thrown-in-remarks" is wholly at odds with the presumption that every word of a statute was included for a purpose and has meaning. *See Robinson*, 290 S.W.3d at 755.

7

broader group of damaged persons, providing guidance as to what types of damaged persons the legislature had in mind.

The majority's basis for concluding otherwise—that the list following "such as" was intended to *expand* the definition of "successors in interest" beyond those who are personally impacted by an attorney in fact's misconduct (like family members, beneficiaries and distributees)—rests on a flawed premise. Contrary to the majority's position, there was no existing case law in 2016 (when the definition of "successors in interest" was added) that limited who could bring claims under section 404.717.5. The cases cited by the majority involving claims for breach of fiduciary duty under section 404.717.5 prior to 2016, while brought by a principal's family member, distributee or designated beneficiary, did not actually address whether those plaintiffs had standing to recover damages under section 404.717.5 or discuss whether they were the principals' "successors in interest" under the statute. *Taylor-McDonald v. Taylor*, 245 S.W.3d 867, 873, 881 (Mo. App. S.D. 2008); *Antrim v. Wolken*, 228 S.W.3d 50, 52 n.2, 54 (Mo. App. E.D. 2007); *see also Mintner*, 530 S.W.3d at 537, 538 n.3 (relying on 2015 statutes, although not citing section 404.717.5, in a case for breach of fiduciary duty brought by the deceased principal's son, who was also the transfer-on-death beneficiary on the principal's certificate of deposit). Nor are there any pre-2016 cases suggesting that a principal's conservator or personal representative could *not* have brought such a claim under section 404.717.5. There simply was *no* existing judicial definition of "successors in interest" before 2016, much less one that limited who could bring a claim under section 404.717.5. There is no basis, then, for the majority to conclude that section 404.717.6 was a legislative response intended to provide a more "expansive" definition of "successors in interest" in the statute.

In sum, section 404.717.6 as currently written is ambiguous. Employing the canons of statutory construction leads to the conclusion that the legislature did not intend for persons like David and Lisa to be deemed "successors in interest" because they are not similar in character to the legal representatives specifically enumerated in the statutory definition. Therefore, I do not believe they have standing to recover damages or attorney fees from Diane under section 404.717.5 and would reverse the trial court's judgment on the breach of fiduciary duty claim.

I would note that David's and Lisa's inability to bring this particular statutory cause of action does not leave persons in their position without *any* remedy against an attorney in fact who commits misconduct. There are common law claims for damages, such as tortious interference with an inheritance expectancy, that would not depend upon the existence of a fiduciary relationship or whether the plaintiff is a successor to the principal. *See generally Brandin v. Brandin*, 918 S.W.2d 835, 837 (Mo. App. E.D. 1996). And, as David and Diane attempted here, one could bring an equitable claim for a constructive trust based on fraud.

### *Constructive Trust*

I concur with the majority's reversal of the constructive trust judgment because David and Lisa failed to present sufficient evidence to identify the specific res to which the trust would attach. *See Ralls Cnty. Mut. Ins. Co. v. RCS Bank*, 314 S.W.3d 792, 795 (Mo. App. E.D. 2010). But the majority should stop there. Instead, the majority enters an additional money judgment in favor of David and Lisa under section 404.717, concluding that the trial court should have itself entered such a judgment. Because David and Lisa lack standing under section 404.717, I respectfully dissent from the majority's entry of the money judgment and its granting of their motion for attorney fees on appeal.

MICHAEL E. GARDNER, Judge

9